## STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY v. GRAIN BELT BREWERIES, INC.

245 N. W. 2d 186.

July 16, 1976—No. 45961.

*Coulter, Nelson & Sullivan* and *V. Owen Nelson,* for appellant.
*Faegre & Benson, James M. Samples,* and *William E. Dorigan,* for respondent.

Heard before Rogosheske, Peterson, and Yetka, JJ., and considered and decided by the court en banc.

MacLAUGHLIN, JUSTICE.

State Farm Mutual Automobile Insurance Company brought this action against Grain Belt Breweries, Inc., seeking reimbursement for funds it paid to its insured for bodily injury and property damage arising out of an accident in which the insured's vehicle was struck by a stolen Grain Belt truck. The dis-

trict court granted Grain Belt judgment notwithstanding the verdict, and State Farm appeals. We reverse.

In this case a vehicle, which was left unattended, unlocked, and with its keys readily available, was stolen and driven negligently, resulting in injury to a third person. The issue presented is whether the negligent driving after the theft is an intervening efficient cause *as a matter of law* so as to render the vehicle owner not liable to the injured party.

On July 25, 1969, two employees of Grain Belt were riding in a large Grain Belt beer truck. It was marked with the Grain Belt symbol and half filled with cases of beer. About 11:30 a. m. the drivers stopped for lunch at Beanie's, 1407 Chicago Avenue, in Minneapolis. Beanie's was a customer of Grain Belt, but on that day the drivers were not making a delivery there. The drivers were in this area 4 days a week, delivering to Beanie's; Danny's Bar & Cafe, an establishment across the street from Beanie's; and Little Judge's Liquor Store. They parked the truck on the street and locked the bay doors (the doors on the side of the truck behind which the beer was stored). They did not lock the cab doors and the keys were left in the cab. After entering Beanie's, they could not see the truck from where they sat.

While the drivers were having lunch, two men, Gerald Duane Bellcourt and James Cloud Morgan, approached the truck. Both men had been drinking. Bellcourt was heavily intoxicated, having attended an all-night party and having been drinking continuously since the previous evening, including beer and whiskey on the morning in question. Bellcourt testified that he opened the driver's door, saw that the keys were in the ignition, and drove the truck away with Morgan as his passenger. They intended to drive the truck a short distance, park it, take a couple of cases of beer, and leave. Shortly before 12:40 p. m., Bellcourt and Morgan drove the truck into the automobile insured by State Farm. The accident occurred at 49th Avenue North and Lyndale Avenue North in Minneapolis, 7 to 9 miles away from Beanie's, about 25 to 40 minutes after the drivers had discovered that the

truck was stolen, and 15 to 30 minutes after the police had been notified of the theft.

State Farm paid its insured $7,531 for the damages she suffered and brought this subrogation action against Grain Belt.[1] The jury, acting upon proper instructions from the trial court, including an express instruction on intervening, superseding causes, found that defendant's employees were negligent and that the negligence was a direct cause of the accident which caused damage to plaintiff's insured. The trial court granted Grain Belt's motion for judgment notwithstanding the verdict, ruling that the theft of a vehicle and the negligent driving of the vehicle after the theft are intervening efficient causes as a matter of law.[2] While this ruling was warranted by our prior decisions, we reverse, and reinstate the verdict for the reasons set forth herein.

In Wannebo v. Gates, 227 Minn. 194, 34 N. W. 2d 695 (1948), the defendant, in violation of a municipal ordinance, left her automobile on a street with its keys in the ignition. The car was stolen and some hours later negligently driven into plaintiff's automobile. We held that a demurrer to the complaint should have been sustained. Reserving the question of the owner's liability when an accident occurs during the thief's flight from the scene of the theft, we ruled that the thief's act in driving negligently was an intervening efficient cause as a matter of law. "* * * [O]ne could hardly say that the owner should anticipate that the thief or his successor in possession would be more likely to have an accident caused by his negligence than the ordinary car operator." 227 Minn. 201, 34 N. W. 2d 699.

In Anderson v. Theisen, 231 Minn. 369, 43 N. W. 2d 272

---

[1] State Farm chose not to name the thieves, Bellcourt and Morgan, as additional defendants.

[2] In granting judgment to defendant notwithstanding the jury verdict, the court observed: "As I read [Minnesota cases cited in this opinion], the rule stated is so broad that the Minnesota Supreme Court probably would not recognize an exception and impose liability where the vehicle is parked in an undesirable neighborhood."

(1950), we confronted a case in which the accident happened while the thieves were fleeing the scene of the theft. The defendant had left his automobile unlocked with the keys in the ignition and the motor running. Assuming, without holding, that leaving the keys in the automobile constituted negligence leading to the theft, we held that the negligent driving of the thieves was an intervening efficient cause of the injury and affirmed the sustaining of a demurrer to the complaint.

In Kalberg v. Anderson Bros. Motor Co. 251 Minn. 458, 88 N. W. 2d 197 (1958), an automobile was parked in a car dealer's lot with the key in the ignition. The key was stolen on one day, and the car was stolen the next. We were invited to overrule Wannebo and Anderson but declined, holding that the automobile owner was not liable to a third person injured by the thief's negligent driving. The district court's action in granting defendant judgment on the pleadings was affirmed.

While the majority of states have held that the negligent driving of a stolen motor vehicle by a thief is an intervening efficient cause which interrupts the causation between the negligent act and the resultant damages, some courts have held otherwise based upon either the common law or upon an ordinance or statute.[3] Annotation, 45 A. L. R. 3d 787.

Significantly, however, there is a move in several states to decide this question on the basis of the peculiar facts involved. For example, 45 A. L. R. 3d 818 states as follows:

"Where a motor vehicle has been left unattended in a locality which is known, or should be known, to the motorist to be one frequented by individuals—such as minors or drunkards—who might be expected both to tamper with the vehicle and to lack the capacity necessary to operate it safely once set in motion, the

[3] E. g., Minneapolis Code of Ordinances, § 478.160, which by its terms applies only to a "passenger automobile," provides:

"Every person parking a passenger automobile on a public street or alley in the city shall lock the ignition, remove the key, and take the same with him."

foreseeable risk to others presented by the leaving of a key in the vehicle's ignition is significantly increased. Accordingly, it has been expressly held or recognized in a considerable number of cases that, although the failure to remove an ignition key might not render the motorist liable for the consequences of an intermeddler's carelessness under normal circumstances, such omission may constitute actionable negligence where the vehicle has been parked unattended in a locality possessing the characteristics described above."

Among the cases cited following this introductory paragraph is Hergenrether v. East, 61 Cal. 2d 440, 39 Cal. Rptr. 4, 393 P. 2d 164 (1964). While the facts in Hergenrether were more extreme than those in the instant case, the essence of the rule which we now adopt is stated therein as follows:

"* * * Special circumstances which impose a greater potentiality of foreseeable risk or more serious injury, or require a lesser burden of preventative action, may be deemed to impose an unreasonable risk on, and a legal duty to, third persons.

\* \* \* \* \*

"* * * [E]ach case must be considered on its own facts to determine whether the joint effect of them in toto justifies the conclusion that the foreseeable risk of harm imposed is unreasonable, and that the defendant owner or one in charge of a vehicle has a duty to third persons in the class of the plaintiffs to refrain from subjecting them to such risk." 61 Cal. 2d 444, 39 Cal. Rptr. 6, 393 P. 2d 166.

The theft in the instant case occurred at 1407 Chicago Avenue, Minneapolis, on the street in front of Beanie's Bar. Nearby on the same side of the street is Little Judge's Liquor Store and across the street is Danny's Bar & Cafe. The driver of the Grain Belt truck on the day of the theft testified at trial as follows:

"Q. You were there three times a week and you had a chance to observe the type of people?

"A. Ah-huh.

"Q. And the drinking that did go on?

"A. Yes, I was very well acquainted.

\* \* \* \* \*

"Q. Lot of transient people?

"A. I don't know. The majority of the people I seen around there did live there.

"Q. But they are a hard-drinking bunch, isn't that right?

"A. I would say proportionately, yes."

A police officer for the City of Minneapolis testified as follows:

"Q. From the twenty years you have been on the force, are you familiar with this area in regards to crime rates in that area?

"A. Yes, I am.

"Q. Based upon your twenty years of experience as a police officer for the City of Minneapolis, what is your knowledge about crime rates in this area?

"A. Well, that it has a rather high crime rate, I would say."

Therefore, the evidence reveals that (a) the keys were left in a large beer truck on a Minneapolis street in an area of bars and an off-sale liquor store while the driver and his helper were having lunch, (b) the truck could not be seen by the employees from the place where they were lunching, (c) the driver knew the area was "proportionately" high in hard drinking, (d) the thieves were two heavily intoxicated individuals, (e) the area is one recognized by the police as having a "rather high crime rate," and (f) the accident happened shortly after the theft while, so far as can be determined from the evidence, the thieves were in flight.

Based on these facts, we hold that a jury could properly find, as did the jury in this case, that the damage to plaintiff's insured was directly caused by the negligent act of defendant's employees. By so holding we do not imply that all such cases involving the negligent driving of a thief must be submitted to the jury.

We hold only that the trial court must consider the facts of each case and determine whether, in its judgment, those facts constitute such special circumstances that a jury could reasonably find that the negligent act of leaving keys in the vehicle directly caused the injury.

As stated by the Oregon Supreme Court in Mezyk v. National Repossessions, Inc. 241 Ore. 333, 340, 405 P. 2d 840, 843 (1965), where the court held that in a case of this kind the particular facts involved are significant in determining liability:

"We are not holding that in every instance a defendant who leaves his keys in the car is liable to a third person injured by a negligent thief of such car. We are holding that the plaintiff should have the opportunity [under the facts of this case as alleged by plaintiff] to proceed to trial and introduce evidence, if she can, of circumstances which may permit the jury to find that the defendant should have known by leaving its keys in its car that there was a reasonable likelihood that a careless thief would steal its car and then would negligently drive away."

Reversed.